******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* KENYAL VICKERS
### (AC 46030)

Moll, Suarez and Prescott, Js.

*Syllabus*

The defendant appealed from the trial court's judgment convicting him of, inter alia, sexually assaulting two women within ten minutes of each other in a Walmart store. He claimed, inter alia, that the court's denial of his motion to sever the charges against him was improper because the incidents as to each victim were separate and distinct and should have been tried separately.

The trial court did not abuse its discretion in denying the defendant's motion to sever the charges and concluding that he would not be substantially prejudiced by trying the charges as to both victims together, as the evidence of each incident was cross admissible to establish the defendant's intent as to each victim, whose testimony was relevant to prove that he was the individual who committed both assaults in close temporal proximity in the same store.

This court declined to review the defendant's claim that the trial court committed plain error by failing, sua sponte, to instruct the jury regarding the proper use of the evidence following the denial of his motion to sever the charges, as the defendant's claim was explicitly conditioned on a threshold determination by this court, which did not occur, that his failure to request or to challenge the absence of a limiting instruction constituted a waiver of his right to challenge the denial of the motion to sever, and the state acknowledged that he had not waived that right.

Argued May 20—officially released October 29, 2024

*Procedural History*

Substitute information charging the defendant with four counts of the crime of breach of the peace in the second degree, two counts of the crime of sexual assault in the fourth degree and one count each of the crimes of attempt to commit robbery in the third degree, attempt to commit larceny in the second degree and failure to appear in the first degree, brought to the Superior Court in the judicial district of Danbury, where the court, *D'Andrea, J.*, denied the defendant's motion for severance; thereafter, the case was tried to the jury before *D'Andrea, J.*; subsequently, the court denied the

defendant's motion for reconsideration; verdict and judgment of guilty of two counts each of sexual assault in the fourth degree and breach of the peace in the second degree, and one count of failure to appear in the first degree, from which the defendant appealed to this court. *Affirmed.*

*Gary A. Mastronardi*, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, former state's attorney, and *Matthew Knopf*, assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Kenyal Vickers, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2), two counts of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (2), and failure to appear in the first degree in violation of General Statutes § 53a-172 (a) (1). On appeal, the defendant claims that the trial court (1) improperly denied his motion for severance of the charges as to two separate victims, and (2) committed plain error in failing to instruct the jury, sua sponte, on the proper use of the evidence following the denial of his motion for severance. We are not persuaded and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 3, 2018, at approximately 9:40 p.m., the first victim, D, and her wife, J, were shopping at the Walmart store in Danbury.[1] D was browsing in the shoe

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

Furthermore, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to

department when the defendant approached her. The defendant bumped into D, apologized to her, and continued down the aisle. Shortly thereafter, he again approached D and asked her where the children's shoes were located. After D answered, the defendant left again but returned a third time. He then pinned her against a shoe rack with one hand while using his other hand to attempt to take her purse. After D dropped her purse, the defendant lifted her dress, pulled down the shorts she was wearing underneath, and touched her buttocks, vaginal area, and breast.

D struggled with the defendant and yelled to J, who was shopping in a different aisle, for assistance. When J approached the defendant and D, he briskly walked toward another area of the store. J attempted to pursue the defendant, and D reported the incident to store employees. While calling 911 to report the assault, D also simultaneously attempted to track the defendant's location within the store.

At this time, the second victim, M, was shopping in the aisle containing cleaning supplies. A Walmart employee was working in the same aisle restocking merchandise on shelves. While reaching for a bottle on the top shelf, M observed a police officer pursuing the defendant, who was moving toward her. As the defendant passed behind M, he reached out and grabbed her buttocks. She quickly grabbed her cell phone and took a photograph of the defendant as he ran away. The store employee immediately confirmed to M that he had seen the defendant grab her buttocks. The police apprehended and arrested the defendant in an adjoining aisle.

The following procedural history is relevant to the defendant's claims on appeal. After his on-site arrest,

identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

the defendant was charged under one docket number with robbery in the third degree in violation of General Statutes § 53a-136, two counts of breach of the peace in the second degree in violation of § 53a-181, and three counts of sexual assault in the fourth degree in violation of § 53a-73a. The initial charges related to both victims.

The defendant subsequently was released on a professional surety bond but failed to appear in court on July 18, 2018. He was rearrested on April 20, 2019, on a failure to appear warrant and was charged with failure to appear in the first degree in violation of § 53a-172 (a) (1).

On March 2, 2020, the defendant filed a motion to sever the charges, asserting that the charges relating to each victim should be tried separately because they involved separate and distinct incidents. The court heard argument on the motion on January 18, 2022. During that argument, defense counsel contended that severance was required because the charges related to two discrete incidents at the Walmart store, occurring approximately ten minutes apart, and involving different complaining witnesses, who differed in age by twenty years. The prosecutor responded, asserting that the charges pertaining to the two victims involved a continuous course of conduct at the Walmart store with similar victims, both of whom described the perpetrator in the same manner. The prosecutor argued that, because the evidence with respect to one victim would be cross admissible with respect to the charges involving the other victim, severance was not warranted. The court took the matter under advisement.

That same day, defense counsel also filed a motion to withdraw as the defendant's attorney on the basis of a breakdown of the attorney-client relationship. The court granted that motion on January 19, 2022, and new counsel was appointed the next day. The court

continued to defer ruling on the motion for severance until the defendant's newly appointed counsel had an opportunity to review it On March 15, 2022, new defense counsel adopted the motion to sever that had been filed by previous counsel and was permitted to make additional argument.

On March 15, 2022, immediately prior to jury selection, the court issued an oral decision denying the defendant's motion to sever the charges. Although the ruling is not a model of clarity,[2] the court appears to have concluded that the motion should be denied, as the charged offenses were "legally related" because the incidents "did, in fact, occur at the same location a short proximity from each other." The court also discussed and applied the *Boscarino* factors,[3] concluding that the defendant would not be substantially prejudiced by the joinder of all of the charged offenses for trial.

Jury selection then commenced. Thereafter, on the first day of evidence, the court heard argument on a motion for reconsideration of the court's prior ruling on the defendant's motion for severance. The prosecutor contended that the motion should be denied, in part because the evidence pertaining to the charges with

---

[2] The defendant did not seek an articulation of the court's ruling on his motion to sever. See Practice Book § 66-5.

[3] "[Our Supreme Court, in *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987)] identified several factors that a trial court should consider in deciding whether a severance [or denial of joinder] may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) *State* v. *Brown*, 195 Conn. App. 244, 250, 224 A.3d 905, cert. denied, 335 Conn. 902, 225 A.3d 685 (2020); see also *State* v. *Payne*, 303 Conn. 538, 543 n.2, 34 A.3d 370 (2012).

respect to one victim was cross admissible with respect to the other victim. Defense counsel addressed the state's cross admissibility argument by contending that a particular video taken from security camera footage inside the store only would be admissible, if at all, with respect to the charges relating to D but would not be admissible with respect to the charges involving M. Defense counsel also asserted briefly that the charges should be severed because the defendant might want to exercise his right to remain silent with respect to the charges involving one victim but may want to testify as to the charges involving the other victim.

Immediately following argument, the court orally denied the defendant's motion for reconsideration. The court did not specifically reference the issue of cross admissibility but repeated some of the reasons it had given when it denied the motion for severance. It also stated that the defendant had failed to make a sufficient showing that his desire to testify regarding some of the charges, but to remain silent as to other charges, justified separate trials.

The state then presented evidence in support of the charges. D and J testified with respect to the incident in the shoe aisle, provided a physical description of the perpetrator, and described how he walked quickly through the Walmart store after grabbing D. M then testified regarding the assault that occurred in the cleaning products aisle. The state also presented testimony, inter alia, from two Walmart employees who were present in the store on the night of May 3, 2018, and from the responding police officers. At no point did the defendant object or claim that the evidence was not cross admissible, nor was any testimony or exhibit admitted into evidence for a limited purpose.

During trial, on March 29, 2022, the state again amended its long form information and charged the defendant

with attempt to commit robbery in the third degree, attempt to commit larceny in the second degree, two counts of sexual assault in the fourth degree, four counts of breach of the peace in the second degree, and failure to appear in the first degree. Two of the breach of the peace counts were charged in the alternative to the other two counts.

The jury returned a verdict of not guilty with respect to the charges of attempt to commit robbery, attempt to commit larceny and two of the counts of breach of the peace. The jury found the defendant guilty of two counts of sexual assault in the fourth degree, two counts of breach of the peace in the second degree, and failure to appear in the first degree. The court subsequently imposed a total effective sentence of six years and 728 days of incarceration, execution suspended after three years, and five years of probation, subject to special conditions.[4] This appeal followed. Additional facts and procedural history will be set forth as necessary to address the specific claims of the defendant.

I

The defendant first claims that the court improperly denied his motion for severance of the charges relating to the two separate victims. Specifically, the defendant contends that the court abused its discretion by concluding, after applying the factors set forth in *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987), that he would not be substantially prejudiced if the charges relating to D and M were tried together. In response, the state contends that the defendant was not deprived of a fair trial by joinder of the offenses because the evidence pertaining to each victim was cross admissible, and that, even if the evidence was

---

[4] It is unclear why the court imposed a sentence with respect to some of the counts in days, while imposing a sentence on some of the counts in years.

not cross admissible, the court did not abuse its discretion by concluding, pursuant to the *Boscarino* factors, that the defendant would not be substantially prejudiced if all of the charges were tried together. We agree with the state.

We begin with the applicable standard of review and relevant legal principles regarding the denial of a motion for severance. General Statutes § 54-57 provides: "Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise." Our Supreme Court has explained that this statute "is directed at prosecutors, and governs the circumstances under which they may join multiple charges in a single information." *State* v. *Payne*, 303 Conn. 538, 547, 34 A.3d 370 (2012). Practice Book § 41-18 provides: "If it appears that a defendant is prejudiced by a joinder of offenses, the judicial authority may, upon its own motion or the motion of the defendant, order separate trials of the counts or provide whatever other relief justice may require."[5] In the present case, the state charged the defendant in a single information, and the defendant subsequently filed a motion to sever the charges with respect to D and M.

"A joint trial expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called to testify only once." (Internal quotation marks omitted.) *State* v. *Wilson*, 142 Conn. App.

---

[5] See, e.g., *State* v. *LaFleur*, 307 Conn. 115, 157, 51 A.3d 1048 (2012) (reasoning argument for joinder is most persuasive if offenses are based on same act or criminal transaction because it is unduly inefficient to require state to resolve same issues at numerous trials); *State* v. *Vaught*, 157 Conn. App. 101, 112, 115 A.3d 64 (2015) (same).

793, 799–800, 64 A.3d 846, cert. denied, 309 Conn. 917, 70 A.3d 40 (2013).[6] Our Supreme Court has noted that "severance is not necessarily to be had for the asking." (Internal quotation marks omitted.) *State* v. *King*, 187 Conn. 292, 302, 445 A.2d 901 (1982), overruled in part on other grounds by *State* v. *Payne*, 303 Conn. 538, 34 A.3d 370 (2012).[7] Specifically, "[i]n the trial court, when multiple charges have already been joined in a single information by the state pursuant to § 54-57, and the defendant has filed a motion to sever the charges for trial pursuant to Practice Book § 41-18, the defendant bears the burden of proving that the offenses are not of the same character . . . and therefore that the charges should be tried separately." (Citation omitted; internal quotation marks omitted.) *State* v. *Payne*, supra, 303 Conn. 549. Additionally, we have explained that "[t]he decision to sever cases for trial is within the sound discretion of the trial court and that discretion must not be disturbed unless it has been manifestly

[6] "[Our Supreme Court] has recognized, however, that improper joinder may expose a defendant to potential prejudice for three reasons: First, when several charges have been made against the defendant, the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate evidence against him . . . . Second, the jury may have used the evidence of one case to convict the defendant in another case even though that evidence would have been inadmissible at a separate trial. . . . [Third] joinder of cases that are factually similar but legally unconnected . . . present[s] the . . . danger that a defendant will be subjected to the omnipresent risk . . . that although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all." (Internal quotation marks omitted.) *Cancel* v. *Commissioner of Correction*, 189 Conn. App. 667, 679–80, 208 A.3d 1256, cert. denied, 332 Conn. 908, 209 A.3d 644 (2019); accord *State* v. *Ellis*, 270 Conn. 337, 374–75, 852 A.2d 676 (2004).

[7] In *State* v. *Payne*, supra, 303 Conn. 549–50, our Supreme Court rejected the blanket presumption in favor of joinder and held that, if charges are set forth in separate informations and the state moves to join the multiple informations for trial, it bears the burden of proving that the defendant will not be substantially prejudiced by joinder pursuant to Practice Book § 41-19. See also *State* v. *James A.*, 345 Conn. 599, 614, 286 A.3d 855 (2022), cert. denied,    U.S.   , 143 S. Ct. 2473, 216 L. Ed. 2d 439 (2023).

abused. . . . The discretion of a court to order separate trials should be exercised only when a joint trial will be substantially prejudicial to the rights of the defendant, and this means something more than that a joint trial will be less than advantageous to the defendant. . . . On appeal, it is always the defendant's burden to show that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Citation omitted; internal quotation marks omitted.) *State* v. *Labarge*, 164 Conn. App. 296, 304, 134 A.3d 259, cert. denied, 321 Conn. 915, 136 A.3d 646 (2016); see also *State* v. *Payne*, supra, 549.

To meet his burden of demonstrating that the charges should be tried separately, "the defendant must prove that the evidence of the separate charges would not be cross admissible if the cases were tried separately. . . . This is because [when] evidence of one incident would be admissible at the trial of the other incident, separate trials would provide the defendant no significant benefit. . . . Under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial. . . . Accordingly, we have found joinder to be proper [when] the evidence of other crimes or uncharged misconduct [was] cross admissible at separate trials." (Citation omitted; internal quotation marks omitted.) *State* v. *Labarge*, supra, 164 Conn. App. 305–306; accord *State* v. *Anderson*, 318 Conn. 680, 692, 122 A.3d 254 (2015); see also *State* v. *Crenshaw*, 313 Conn. 69, 83–84, 95 A.3d 1113 (2014). If the evidence is not cross admissible, then the trial court is required to consider the *Boscarino* factors to assess whether the defendant will suffer undue prejudice from the joinder of offenses. See *State* v. *Labarge*, supra, 306; see also *State* v. *James A.*, 345 Conn. 599, 620–21, 286 A.3d 855 (2022), cert. denied,    U.S.    , 143 S.

Ct. 2473, 216 L. Ed. 2d 439 (2023); *State* v. *Crenshaw*, supra, 83 n.8.

In the present case, the defendant filed a motion to sever the offenses on March 2, 2020. The court heard argument on the motion on January 18, 2022. Defense counsel claimed that, if the defendant had been charged in two separate informations, then the state would not be permitted to join them for trial. At that time, defense counsel did not address the matter of cross admissibility of the evidence. The prosecutor began his response by pointing out that the two incidents occurred within minutes of each other, which indicated a clear course of conduct by the defendant at the Walmart store. He then specifically argued that, if the matters were tried separately, the evidence would be cross admissible. Defense counsel did not respond to the prosecutor's cross admissibility argument. The court did not rule on the defendant's motion.

After new defense counsel adopted the motion to sever filed by prior counsel, the court heard additional argument. Again, the issue of the cross admissibility of the evidence was not addressed by defense counsel in her initial or rebuttal arguments with respect to the motion for severance. The prosecutor reasserted that the evidence regarding the two incidents was cross admissible.

The court began its oral ruling by contrasting the facts of the present case with those in *State* v. *Boscarino*, supra, 204 Conn. 714.[8] Additionally, the court noted

---

[8] Specifically, the court concluded: "Consequently, [our Supreme Court has] identified several factors that the trial court should consider in deciding whether severance may be necessary to avoid undue prejudice resulting in consolidation of multiple charges for a trial. Those factors include, one, whether the charges involve discrete, easily distinguishable facts, scenarios. Clearly, these are discrete and easily distinguishable facts, scenarios that occurred over seconds and not a long period of time as the other case that I had—*Boscarino* that I had previously cited to.

"Two, whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part. Clearly, that is not present—

that the two incidents in the present case were "*legally related* here because they did, in fact, occur at the same location a short proximity from each other." (Emphasis added.) Ultimately, the court denied the defendant's motion to sever.

On March 24, 2022, prior to the start of evidence, defense counsel moved for reconsideration of the denial of the motion to sever. She argued that it was "clear" that the defendant would suffer prejudice as a result of the joinder of the two separate incidents alleged in the operative information in a single trial. Defense counsel further pointed out that it would be difficult for the jury to consider the relative strengths of the victims' testimony regarding their individual identifications of the defendant as the perpetrator. The prosecutor disagreed, pointing out that the two incidents occurred within minutes, in the same building by the same person. Furthermore, he again asserted that "[a]ll the evidence is cross admissible." In response, defense counsel countered that the evidence was not cross admissible.[9] The court orally denied the motion for reconsideration.

present here and will not create the . . . prejudice that was apparent in the *Boscarino* matter. And finally, three, the duration and complexity of the trial could make it difficult for the jury to deal with this. This is not going to be a ten week trial with dozens of witnesses. This should be several days long with possibly half a dozen to ten short—relatively short witnesses. Based on the three criteria here, there is no basis for the motion to sever to be granted."

[9] In response to the prosecutor's cross admissibility argument, defense counsel stated the following in arguing for reconsideration of the denial of the motion to sever: "[The prosecutor] made reference to [§] 54-57 that talks about cross admissibility as a factor that the court should consider in determining whether severance is appropriate. And essentially, if evidence would be cross admissible, there would be no reason to consider a severance because two trials wouldn't be necessary. I would submit . . . that, in this case, we do have issues of evidence that would not be cross admissible between these two matters . . . ." During the trial, defense counsel did not, however, object to any evidence on the ground that it was not cross admissible or seek to have any evidence admitted for a limited purpose only.

Our decision in *State* v. *Carty*, 100 Conn. App. 40, 916 A.2d 852, cert. denied, 282 Conn. 917, 925 A.2d 1100 (2007), is informative with respect to the present appeal. In that case, the first victim left her house at about 2 a.m. to purchase drugs and cigarettes on March 27, 2001. Id., 42. The defendant drove next to her as she walked along the street, and, after a brief conversation, she got into his car. Id. The defendant drove to a parking lot, pulled out a knife, placed it against her neck, and demanded that the first victim give him all of her money. Id., 42–43. A similar incident occurred a few days later. Id., 43. In the early morning of April 1, 2001, the second victim walked to a gasoline station to purchase cigarettes. Id. The defendant, who was at the gasoline station, ultimately agreed to drive the second victim back to her residence. Id. The defendant drove into a parking lot, jumped over the middle of the seat, placed a knife against the throat of the second victim, and took her money. Id.

The defendant was charged with two counts of robbery in the first degree and one count of possession of a weapon in a motor vehicle. Id., 44. The state moved to consolidate the two matters and, following the granting of that motion, the defendant was convicted of all charges. Id. On appeal, the defendant claimed, inter alia, that the court improperly granted the state's motion to consolidate the robbery charges. Id. The state countered that (1) the defendant was not prejudiced by joinder because the evidence of both robberies would have been cross admissible as acts of misconduct to prove identity, and (2) even if it were not cross admissible, the court did not abuse its discretion in granting the joinder motion because the jury could distinguish the underlying facts of each crime. Id.

In resolving the issues on appeal, this court noted that, at trial, "the state presented arguments for joinder both under the factors enunciated in *State* v. *Boscarino*,

supra, 204 Conn. 722–24, and under the theory that the evidence from each case would be cross admissible. Although the [trial] court granted the state's motion to consolidate the charges without explaining the theory on which it relied, we conclude that the court could have properly joined the charges under either theory." *State* v. *Carty*, supra, 100 Conn. App. 45 n.5. This court then set forth the relevant legal principles regarding cross admissibility of evidence when multiple charges are tried together. We began with the general rule that evidence of guilt of one crime is inadmissible to prove that a defendant is guilty of a different crime. See id., 46; see also Conn. Code Evid. § 4-5. "The rationale of this rule is to guard against its use merely to show an evil disposition of an accused, and especially the predisposition to commit the crime with which he is now charged. . . . The fact that such evidence tends to prove the commission of other crimes by an accused does not render it inadmissible if it is otherwise relevant and material. . . . Such evidence is admissible for other purposes, such as to show intent, an element in the crime, identity, malice, motive or a system of other criminal activity. . . . The analysis on the issue of other crimes evidence is two-pronged. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crimes evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Carty*, supra, 46; see also *State* v. *Michael R.*, 346 Conn. 432, 447, 291 A.3d 567 (to be cross admissible, evidence must be relevant and more probative than prejudicial), cert. denied,      U.S.     , 144 S. Ct. 211, 217 L. Ed. 2d 89 (2023); Conn. Code Evid. § 4-3.

In the present case, the trial court did not explicitly state that the evidence of the two assaults was cross

admissible. After reviewing the record, we conclude that the court implicitly determined that it was cross admissible. Initially, we note that the prosecutor consistently argued to the court that the evidence from the two incidents was cross admissible. Additionally, the court observed that the two incidents were legally related. Other courts have considered or used the phrase "legally unrelated" or "legally connected" as shorthand in discussing the cross admissibility of evidence. See, e.g., *State* v. *Fana*, 109 Conn. App. 797, 803, 953 A.2d 898, cert. denied, 289 Conn. 936, 958 A.2d 1246 (2008); *State* v. *Quinones*, 21 Conn. App. 506, 512, 574 A.2d 1308, cert. denied, 215 Conn. 816, 576 A.2d 546 (1990).

We conclude that the evidence of each incident would be relevant[10] to the other to prove the state's theory that the defendant was the individual who assaulted each of the victims.[11] Specifically, we address the applicable exceptions to § 4-5 (a) of the Connecticut Code of Evidence.[12] We begin with the exception for identity.

---

[10] See, e.g., *State* v. *Patrick M.*, 344 Conn. 565, 600, 280 A.3d 461 (2022) (evidence is relevant if it has any tendency to make existence of any fact that is material to determination of proceeding more or less probable than it would be without said evidence); *State* v. *Patterson*, 344 Conn. 281, 295, 278 A.3d 1044 (2022) (noting broad definition of relevance).

[11] During cross-examination, D admitted that she had told the 911 operator that she could not see the person who had assaulted her in the Walmart store for a brief time period as she was following him in the store, but she had told the police she had kept him in view at all times. Additionally, D acknowledged that the police had shown her a photographic lineup a few days prior to trial but that she was unable to identify the man who had assaulted her.

[12] Section 4-5 (a) of the Connecticut Code of Evidence provides: "Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character, propensity, or criminal tendencies of that person except as provided in subsection (b)."

Section 4-5 (c) of the Connecticut Code of Evidence provides: "Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony."

It is axiomatic that "[i]t is the state's burden to prove every element of the crime, including [identity] . . . ." (Internal quotation marks omitted.) *State* v. *Murrell*, 7 Conn. App. 75, 80, 507 A.2d 1033 (1986); see also *State* v. *Faust*, 161 Conn. App. 149, 183, 127 A.3d 1028 (2015) (identity of defendant is element of proof of all crimes), cert. denied, 320 Conn. 914, 131 A.3d 252 (2016). The testimony of each victim was relevant to prove that the defendant was the individual who was present in the Walmart store and who committed both of the sexual assaults in close temporal proximity. Here, the testimony of D and M placed the defendant in the store and identified him as the perpetrator of the sexual assaults. The evidence, therefore, was not offered for the defendant's propensity to engage in the illegal conduct but only for the purpose of corroborating each victim's testimony that it was the defendant who had assaulted them. See, e.g., *State* v. *Mooney*, 218 Conn. 85, 126–30, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 330 (1991); *State* v. *Gerald A.*, 183 Conn. App. 82, 100, 107–108, 191 A.3d 1003, cert. denied, 330 Conn. 914, 193 A.3d 1210 (2018).

Additionally, we note that other misconduct evidence "may be used to complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings . . . [and] is admissible to corroborate crucial prosecution testimony." (Citations omitted; internal quotation marks omitted.) *State* v. *Michael R.*, supra, 346 Conn. 448–49. We emphasize that the evidence regarding the assault of each victim served to establish the presence of the defendant in the Walmart store and completed the story of his movements, actions, and conduct within the store on May 3, 2018, during his single, unbroken course of conduct. See, e.g., *State* v. *Gould*, 241 Conn. 1, 23, 695 A.2d 1022 (1997) (misconduct evidence often used to complete story of charged crime by placing it in context of nearby

and nearly contemporaneous happenings); *State* v. *Bardales*, 164 Conn. App. 582, 603, 137 A.3d 900 (2016) (same); see also *State* v. *Crenshaw*, supra, 313 Conn. 85–86 (evidence was cross admissible to complete story of what happened to victim over two days and therefore "essential" to consider two cases together).

Moreover, the cross admissible evidence was relevant to establish the defendant's intent with respect to each sexual assault that occurred in the Walmart store on May 3, 2018. Sexual assault in the fourth degree is a specific intent crime. See, e.g., *State* v. *Juan J.*, 344 Conn. 1, 22, 276 A.3d 935 (2022) (to obtain conviction of sexual assault in fourth degree, state is required to prove defendant acted with intent to make contact with intimate parts of person for purpose of sexual gratification of actor or for purpose of degrading or humiliating such person, or any contact of intimate parts of actor with person for purpose of sexual gratification of actor or for purpose of degrading or humiliating such person); *State* v. *Tahir L.*, 227 Conn. App. 653, 660,      A.3d (2024) (conviction of sexual assault in fourth degree requires state to prove defendant had specific intent to obtain sexual gratification or to humiliate complainant), petition for cert. filed (Conn. September 16, 2024) (No. 240159). The evidence regarding the assault of D in the shoe aisle was relevant to demonstrate that the defendant did not make accidental or inadvertent contact with M in the cleaning supplies aisle but, rather, touched D with the intent required for a conviction of sexual assault in the fourth degree. See also *State* v. *Beavers*, 290 Conn. 386, 400–401, 963 A.2d 956 (2009) (absence of mistake or accident exception in § 4-5 (c) of Connecticut Code of Evidence is close corollary of intent exception, and our Supreme Court has recognized that same uncharged misconduct evidence is admissible for dual purposes of proving defendant's intent and that occurrence was result of intentional act

rather than accident); *State* v. *Kalil*, 136 Conn. App. 454, 465–67, 46 A.3d 272 (2012) (police chief's testimony about defendant's misconduct at one location was admissible to demonstrate defendant's intent to commit crime at another location hours later), aff'd, 314 Conn. 529, 107 A.3d 343 (2014). Similarly, evidence of the assault of M further demonstrated that the defendant possessed the necessary intent with respect to D.[13] In other words, the cross admissible evidence had the tendency to make it more probable that the defendant committed the crimes against each victim. See, e.g., *State* v. *Michael R.*, supra, 346 Conn. 448–49.

For these reasons, we conclude that the court properly determined, albeit implicitly, that the evidence from the two assaults was cross admissible.[14] As a result of

_____

[13] Although the state did not argue in its appellate brief that the evidence of the two assaults was cross admissible pursuant to the propensity exception for sexual crimes; see Conn. Code Evid. § 4-5 (b); we note that the trial court also could have determined that the evidence of each assault was probative of the defendant's propensity to engage in aberrant and compulsive sexual behavior. See *State* v. *Eddie N. C.*, 178 Conn. App. 147, 158 n.9, 174 A.3d 803 (2017), cert. denied, 327 Conn. 1000, 176 A.3d 558 (2018). "In *State* v. *DeJesus*, [288 Conn. 418, 466, 953 A.2d 45 (2008), our Supreme Court] held that, in cases involving sexual misconduct, [e]vidence of [other sexual] misconduct is admissible [for propensity purposes] if the offense is proximate in time, similar to the offense charged, and committed with persons similar to the prosecuting witness. . . . Citing strong public policy reasons, [the] court in *DeJesus* explained that sexual misconduct is often a behavioral pattern, making past misconduct highly probative of other conduct. . . . These factors long have served as the predominant framework for considering the admission of other sexual misconduct evidence to establish a common plan or scheme; see, e.g., *State* v. *Esposito*, 192 Conn. 166, 169–70, 471 A.2d 949 (1984); and have since been codified. Conn. Code Evid. § 4-5 (b) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Samuel U.*, 348 Conn. 304, 322, 303 A.3d 1175 (2023).

[14] It is well established that appellate courts have "never required the talismanic recital of specific words or phrases if a review of the entire record supports the conclusion that the trial court properly applied the law. . . . Rather, [our Supreme Court and] this court [presume] that the trial court properly applied the law in the absence of evidence to the contrary." (Citations omitted; internal quotation marks omitted.) *State* v. *Henderson*, 312 Conn. 585, 597–98, 94 A.3d 614 (2014); see also *State* v. *James K.*, 209 Conn. App. 441, 465, 267 A.3d 858 (2021), aff'd, 347 Conn. 648, 299 A.3d 243

this determination, the defendant was not prejudiced by the denial of his motion to sever. Furthermore, we need not consider the defendant's arguments that the court improperly applied the *Boscarino* factors in this case. Our Supreme Court has explicitly stated that if "evidence is cross admissible . . . our inquiry [as to whether joinder would be prejudicial to the defendant] ends." (Internal quotation marks omitted.) *State* v. *James A.*, supra, 345 Conn. 615; see id., 620–21; see also *State* v. *Michael R.*, supra, 346 Conn. 444; *State* v. *Crenshaw*, supra, 313 Conn. 82 n.6; *State* v. *LaFleur*, 307 Conn. 115, 155, 51 A.3d 1048 (2012); *Leconte* v. *Commissioner of Correction*, 207 Conn. App. 306, 327–28, 262 A.3d 140, cert. denied, 340 Conn. 902, 263 A.3d 387 (2021); *State* v. *Labarge*, supra, 164 Conn. App. 306. Accordingly, we conclude that the court did not abuse its discretion in denying the motion to sever.

## II

The defendant also claims that the trial court committed plain error by failing to instruct the jury, sua sponte, on the proper use of the evidence following the denial of his motion to sever. Specifically, he argues that, if this court were to conclude that his failure to request a jury instruction regarding the joinder of the offenses constituted a waiver of his right to challenge the denial of his motion to sever, then we should reverse his conviction pursuant to the plain error doctrine. We decline to review the merits of this claim.

In his principal appellate brief, the defendant states: "*However, even if the state, on appeal, should argue, and even if this court were to find*, that, by failing to submit a proposed cautionary instruction, or to timely object to the court's failure to give one, the defense had now somehow waived its right to raise, on appeal,

---

(2023); *State* v. *Papineau*, 182 Conn. App. 756, 771–72, 190 A.3d 913, cert. denied, 330 Conn. 916, 193 A.3d 1212 (2018).

the claim that the court's denial of severance was an abuse of discretion which had resulted in 'substantial injustice' in this case, for the following reasons, reversal of the defendant's convictions, and an order requiring a new trial, would still be required since such reversal is warranted under the 'plain error doctrine.' " (Emphasis added.) See Practice Book § 60-5. The defendant's further argues in his brief: "Accordingly, in this case, even if this court were to somehow conclude that (a) joinder was proper; *and (b) that, by failing to request a proper jury instruction, or register a timely objection to the court's failure to give one, defense counsel had waived or forfeited the right to contest the trial court's joinder/ severance decision on appeal,* this court, nonetheless, under the plain error doctrine, must order reversal of the defendant's convictions and remand for a new trial." (Emphasis added.)

In its appellate brief, the state counters that it "concedes that the defendant did not waive his right to challenge the trial court's denial of his motion to sever by failing to request a limiting instruction or [by] not objecting to its absence. *The state's concession renders the defendant's claim of plain error superfluous because the defendant tethers it to the state['s] making a waiver argument.* . . . Consequently, the court does not need to review it." (Citation omitted; emphasis added.) The state further argues that the defendant failed to demonstrate that the trial court committed plain error in failing to give a cautionary or limiting instruction regarding the joining of the charges of both incidents.

The defendant's claim of plain error was conditioned explicitly on the threshold determination of this court that his failure to request a jury instruction, or object to the absence of such an instruction, constituted a waiver of his claim that the trial court improperly denied his motion to sever. That condition precedent did not

occur because we have reviewed the merits of the defendant's claim regarding the motion to sever in part I of this opinion. Our reading of the defendant's brief is supported by the state's acknowledgment in its brief that he did not waive his claim regarding the denial of the motion to sever. Accordingly, we need not consider the defendant's claim of plain error.

Even if we were to consider this claim, we would conclude that the defendant failed to demonstrate plain error. Our Supreme Court has explained that, "[t]o prevail, the defendant must satisfy the two-pronged plain error test. First, the defendant must establish that there was an obvious and readily discernable error . . . . Second, the defendant must establish that the obvious and readily discernable error was so harmful or prejudicial that it resulted in manifest injustice. . . . The plain error doctrine is a rule of reversibility, not reviewability, and the defendant is not entitled to relief unless the alleged error is both so clear and so harmful that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Put another way, plain error is reserved for only the most egregious errors. When an error of such magnitude exists, it necessitates reversal." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Mebane*, Conn. , , A.3d (2024).

The defendant failed to identify the specific jury instruction that the court should have provided in the present case. In light of our conclusion that the evidence regarding the two separate victims was cross admissible, it is entirely unclear what instruction the defendant believes was required in order to avoid a manifest injustice. Properly constructed jury instructions may well differ depending on whether the evidence is cross admissible, as opposed to instructions in cases in which the evidence is not cross admissible, but the charges

nonetheless were still properly joined for trial in accordance with the *Boscarino* factors.[15]

More importantly, the defendant has not demonstrated that the trial court's failure to provide such an instruction to the jury was an obvious and readily discernable error that resulted in manifest injustice. Simply stated, the defendant has not met his burden of establishing a "most egregious" error warranting reversal of his conviction. Accordingly, we conclude that, even if we were to consider this claim under the plain error doctrine, the defendant would not be entitled to a reversal of his conviction.

The judgment is affirmed.

In this opinion the other judges concurred.

———————————

[15] Compare *State* v. *Michael R.*, supra, 346 Conn. 451–52, 452 n.18 (jury was instructed that evidence may apply to more than one count, but defendant was entitled to separate and independent determination of guilt for each count), with *State* v. *Norris*, 213 Conn. App. 253, 287, 277 A.3d 839 (preferrable for trial court to instruct jury that evidence in domestic violence case was not admissible in hospital assault case and that cases were consolidated solely for judicial economy, and to emphasize requirement that jury consider evidence in each case separately), cert. denied, 345 Conn. 910, 283 A.3d 980 (2022). See generally Connecticut Criminal Jury Instructions 2.2-6, available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited October 23, 2024).